IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY LYLE KELLEY,<br><br>  Plaintiff,<br><br>  vs.<br><br>LEE WHITMER, Turlock Police Sargent, LONALD LOTT, Turlock Chief of Police, STEVE PETERS, Turlock Police Training Officer, CRISTINA MAGANA, Turlock Police Officer, MICHAEL SIMBALENKO, Turlock Police Officer, TURLOCK POLICE DEPARTMENT, and CITY OF TURLOCK,<br><br>  Defendants.<br>_____/ | CASE NO. CV-F-05-1540 LJO DLB<br><br>**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

**I. INTRODUCTION**

Defendants Sargent Whitmer, Chief Lott, Officer Peters, Officer Magana, Officer Simbalenko, Turlock Police Department and City of Turlock (referred to collectively as "Defendants") move for summary judgment in this action brought by Plaintiff Jeffrey Kelley ("Plaintiff" or "Kelley") based on 42 U.S.C. § 1983. Kelley alleged that he was wrongfully arrested in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. Kelley further alleged a custom or policy by the Turlock Police Department which violated his constitutional rights. Kelley provided no evidence to support his many claims against the individually named defendants. Further, the conduct admitted to by Kelley supports a finding that there was probable cause for his arrest. Therefore, Defendants' motion for summary judgment is GRANTED in full.

**II. BACKGROUND**

On December 15, 2003, Angela Kelley ("Mrs. Kelley) and Plaintiff had an argument over a telephone call from a "collection agency" because of an unpaid bill. The argument escalated and Mrs.

1  Kelley eventually slapped or punched Plaintiff in the biceps and the kicked him in the shin. Plaintiff
2  pushed Mrs. Kelley. The push caused Mrs. Kelley to trip on the carpet and fall down.

3        Mrs. Kelley's daughter Tiffany ("Tiffany") saw Plaintiff push Mrs. Kelley and Mrs. Kelley's
4  subsequent fall. Tiffany thought Plaintiff was harming her mother and tried to intervene. Tiffany
5  jumped on Plaintiff's back. Plaintiff grabbed Tiffany's wrists and pushed her to sit down. She told
6  Plaintiff that she was going to call the police. She picked up a phone and dialed 911. The police
7  department answered and a voice came over the line when Plaintiff took the phone out of her hand and
8  hung up the phone. Tiffany tried unsuccessfully to regain control of the phone. Plaintiff would not
9  allow her to have the phone back. Mrs. Kelley left the house and Plaintiff followed her out. Tiffany
10 went upstairs and again called 911 emergency services. During the phone conversation, Tiffany
11 informed the dispatcher that Plaintiff was a Sheriff deputy.

12       Turlock City Police Department received the 911 call reporting an assault and battery in progress.
13 Arriving to the scene were Turlock police officers Training Officer Peters, Trainee Magana, Officer
14 Simbalenko, and Sargent Whitmer (collectively referred to as "responding officers" or "defendants").
15 At the scene, Plaintiff admitted to the responding officers that he took the phone away from Tiffany
16 because he did not want his career or relationship harmed. Plaintiff was arrested by Turlock City Police
17 Department for violation of Penal Code section 591. Plaintiff was taken to Tuolumne County Jail where
18 he was allowed to enter through an employee entrance, booked, and released on bond. Ultimately, the
19 District Attorney's Office chose not to file a complaint against Plaintiff. Mem. in Opp., Ex. D.

20       Plaintiff subsequently filed this matter, alleging a violation of 42 U.S.C. § 1983 ("Section 1983").
21 On June 15, 2007, Defendants filed this motion. (Doc. 30). On June 28, 2007, Plaintiff responded in
22 opposition of the motion for summary judgment. (Docs. 32-34). The Court has read and reviewed the
23 memoranda and exhibits filed and issues the following order.

24 **III. DISCUSSION**

25 **A.   Summary Judgment Standard**

26       On summary judgment, a court must decide whether there is a "genuine issue as to any material
27 fact." F.R.Civ.P. 56( c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Poller v. Columbia
28 Broadcast System*, 368 U.S. 464, 467 (1962); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985);

*Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The criteria of "genuineness" and "materiality" are distinct requirements. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The requirement that an issue be "genuine" relates to the quantum of evidence the plaintiff must produce to defeat the defendant's summary judgment motion. There must be sufficient evidence "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

"As to materiality, the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial," and in such circumstances, summary judgment should be granted "so long as whatever is before the . . . court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56 (c), is satisfied." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting F.R.Civ.P. 56(e)).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 290 (1968) *T.W. Elec. Serv.*, 809 F.2d at 631. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matasushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted). The opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255; *Matasushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.     Civil Rights and Fourth Amendment**

**1.     Section 1983**

Plaintiff filed a civil rights claim pursuant to 42 U.S.C. § 1983, alleging a violation of the Fourth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment. 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 943 (9th Cir. 2004).

Additionally, the Supreme Court has held that cities and local officers sued in their official capacities cannot be held vicariously liable under Section 1983 for the actions of subordinate officers (*Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)), but that they may be held liable for constitutional violations where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopting that official policy is responsible for the deprivation of rights protected by the Constitution." *Monell*, 436 U.S. 658, 690. Section 1983 "plainly imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional right." *Id.* Thus, "a local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983." *Monell,* 436 U.S. 658, 691.

Thus, a plaintiff must plead and prove: (1) a municipal custom or policy and (2) that this custom or policy was "the cause of and the moving force behind the deprivation of constitutional rights." *Oklahoma City v. Tuttle*, 471 U.S. 808, 819 (1985). In other words, there is no *respondeat superior* liability against a municipality. Plaintiffs may impute conduct to the municipality if the individual committing an alleged wrong is a "policy-maker" within the municipality hierarchy. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-28 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 489 (1986).

A court reviewing a Section 1983 claim must "identify those officials or government bodies who speak with final policy-making authority for the local governmental actor concerning the action alleged

to have caused the particular constitutional or statutory violation at issue." *McMillan v. Monroe County*, 520 U.S. 781, 783-84 (1997), citing *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989). If the sheriff's actions constitute county "policy," then the county is liable for them. *McMillan*, 520 U.S. 781, citing *Monell*, 436 U.S. 658, 694.

### 2. Fourth Amendment

"[I]n actions for the unconstitutional seizure of persons by officials, liability will be determined under the specific standards of the Fourth Amendment rather than under the general due process standards of the Fourteenth Amendment." *Larson v. Neimi*, 9 F.3d 1397, 1402 (9th Cir. 1993). U.S. Constitution, Amendment IV reads, in part: "[N]o warrants shall issue, but upon probable cause...." In this case, Kelley was arrested without warrant, but a warrantless arrest of an individual upon probable cause does not violate the Fourth Amendment." *United States v. Santana* 427 U.S. 38 (1976) (a person standing in the threshold of their house is not subject to Fourth Amendment protection).

Kelley asserts that while investigating the 911 call, the responding officers "negligently and/or maliciously and intentionally and without justification, arrested, battered, and falsely imprisoned plaintiff." Complaint, ¶ 15. To satisfy the Fourth Amendment, the warrantless arrest of a person must be reasonable. *Payton v. New York*, 445 U.S. 573 (1980). "Cause for arrest exists when the facts known to the arresting officer would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." *People v. Harris*, 15 Cal. 3d 384, 389 (1975). Under California law, a peace officer has the authority to make a warrantless arrest when he/she has "probable cause to believe that the person to be arrested has committed a felony, whether or not a felony, in fact, has been committed." Cal. Penal Code section 836(a)(3).

///

#### a. Probable cause existed

Pursuant to Cal. Penal Code Section 591, a public offense is committed if a person "unlawfully and maliciously takes down, removes, injures, or obstructs any line of telegraph, telephone, or cable television, or any other line used to conduct electricity, or any part thereof, or appurtenances or apparatus connected therewith." A violation of this section is punishable by incarceration state prison, a fine of

5

up to five hundred dollars ($500), or incarceration in the county jail not exceeding one year. *Id*. Thus, under the definition of the crime, it can be classified as a felony. *Id*; *see also*, Cal. Penal Code 17(a) ("A felony is a crime which is punishable with death or by imprisonment in the state prison.")

In *People v. Tafoya*, 92 Cal. App. 4th 220 (2001), the defendant removed the battery from his estranged wife's cordless phone when the wife tried to call her mother during an argument. The wife used a different phone in the home to call the police. Similar to Plaintiff's arguments, Defendant argued that his conduct did not violate Section 591, because that section applied solely to obstruction or interference with a telephone line as distinguished from the telephone instrument itself. The trial court found that a jury could properly find defendant guilty under Section 591 based on his removal of the battery from the wife's cordless phone. The Court of Appeals affirmed the trial court's decision, reasoning that "disabling a private telephone can violate Section 591" and "Section 591 is in the disjunctive; it makes it a crime to injure or obstruct *either* a telephone line *or* 'appurtenances or apparatus connected therewith'." *Tafoya*, 92 Cal. App. 4th 220, 227 (emphasis in original) (citing Section 591). Based on these facts, the appellate court "conclude[d] that there was sufficient evidence to support defendant's conviction under section 591." *Id.*

In *People v. Kreiling*, 259 Cal. App. 2d 699 (1968), the court held that tampering with the money mechanism of a pay phone is sufficient to sustain a violation of this section. Any tampering with a telephone instrument in such a way as to prevent its use "obstructs any line of telephone...or apparatus connected therewith," the same as if the telephone line were physically severed. *Id.* at 704-05. Malice as it pertains to this section is defined as "a wish to vex, annoy or injure another person." *Tafoya*, 92 Cal. App. 4th 220, 225.

Kelley admitted to the responding officers that he took the phone away from Tiffany while she attempted to dial 911. Kelley described the incident as follows:

> A. Tiffany grabbed the phone, picked it up and pushed the button. So I could hear the dial tone, and so I'm telling her, Tiffany, put the phone down, your mom's going to leave, you know, we don't need the police, we don't need the police out here.
>
> ***
> Q. Do you know what her intention was?
> A. Yeah, she was going to call 911.
> Q. She said, I'm going to call 911, and then you told her put it down, we don't need the cops out here?

6

> A. That's right.....
> Q. Did you take the phone away from her?
> A. I took it away. I pushed the talk button to turn the dial tone off, and I sat it down on the computer desk.

Deposition of Kelley, 66:20-67:21, Ex. A to Mem. in Opposition. Based on this testimony alone, the responding officers had probable cause to believe a felony had been committed by Kelley. These events were corroborated by statements made by Mrs. Kelley and Tiffany.

Section 591 prohibits a person from tampering with or injuring a telephone line or apparatus. A violation of this statute is a felony. Under California law, a peace officer has the authority to make a warrantless arrest when he/she has "probable cause to believe that the person to be arrested has committed a felony, whether or not a felony, in fact, has been committed." Cal. Penal Code section 836(a)(3). In a similar situation, as described above, a defendant was properly charged with a violation of Section 591 for taking the battery out of a cordless phone to prevent a person from calling her mother. Furthermore, a violation of Section 591 "encompasses conduct by which the transmission of a telephone message is interrupted...One who tampers with a telephone instrument in such way as to preclude its use for receiving or placing calls obstructs any line...." *People v. McElroy*, 126 Cal. App. 874, 883 (2005). In this case, Kelley removed the phone from Tiffany's hand and pushed the button to turn it off in order to prevent her from calling 911 emergency services. Based on these facts, which Kelley admitted to the responding officers, and the totality of the circumstances, including the testimony of Mrs. Kelley and Tiffany, a person of ordinary care and prudence would believe and conscientiously entertain an honest and strong suspicion that Kelley was guilty of that crime. *People v. Harris*, 15 Cal. 3d 384, 389 (1975).

The fact that the District Attorney's Office chose not to file a complaint against Kelley does not prove that he was innocent, as Kelley asserts, nor does that prove that the arresting officer lacked probable cause. When acting within the scope of his/her authority, a law enforcement official may properly arrest someone upon probable cause for the commission of a felony. Cal. Penal Code section 836(a)(3). Whether or not plaintiff was actually charged with the crime has no bearing on whether or not probable cause existed to effectuate the arrest. *Coverstone v. Davies*, 38 Cal. 2d 315, 319 (1952);

7

*Neves v. Costa*, 5 Cal. App. 111 (1907).[1]

### b. Closely related offense doctrine

Defendants also argue that probable cause existed based on the "closely related offense doctrine." According to that doctrine, probable cause may exist for an arrest for a closely related offense, even if that offense was not invoked by the arresting officer, as long as it involves the same conduct for which the suspect was arrested. *Bingham v. Manhattan Beach*, 341 F.3d 939 (9th Cir. 2003). Here, Plaintiff was arrested for taking the phone away from Tiffany, thereby preventing her from using the phone to call 911. Using the same conduct, Defendants argue, the arresting officers could have arrested Kelley for a felony violation of California Penal Code section 136.1(b) which states in pertinent part:

> Every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense...(1) Making a report of that victimization to any peace officer or state or local law enforcement officer

In *People v. McElroy*, 126 Cal. App. 4th 874 (2005), defendant took the telephone away from his girlfriend as she tried to call 911 and hung it up. Defendant then unplugged the phone so that she could not use it. The appellate court affirmed the court's ruling that by disconnecting the telephone, removing it, and precluding its use, there was sufficient evidence for the jury to conclude that defendant violated Section 591, as well as Cal. Penal Code 136.1(b)(1), because defendants was "attempting to dissuade a victim by removing the telephone...the telephone cannot be used to make a telephone call and, in this case, to call the police." *Id*. at 884. The conduct admitted by Kelley would cause a reasonable person to find probable cause that a crime had been committed under either section.

### c. No demonstrated unconstitutional custom or policy

In order to prevail on this Section 1983 claim against the City of Turlock and the Turlock Police Department, Kelley must prove "the action that is alleged to be unconstitutional implements [] executes a policy statement, ordinance, regulation, or decision officially adopting that official policy is responsible

---

[1] Kelley recognizes this distinction in his deposition, where he stated, "I wasn't prosecuted, they're still going to investigate it and make sure that even though it wasn't prosecuted that it couldn't have been founded, you know what I mean. Just because it wasn't prosecuted doesn't mean that it wasn't founded and not–enough to not hire an officer." Deposition of Kelley, 88:14-20. Kelley continues, "If I have a letter saying that this was a wrong arrest, if I have proof of that, oh, we made a mistake, then I have more backing. I have something to back me up." *Id*. 88:20-23.

8

for the deprivation of rights protected by the Constitution." *Monell*, 436 U.S. 658, 690.  Kelley asserts that the "incident which led to the wrongful arrest of plaintiff...was not only the random unauthorized act of an individual Turlock police officer, but rather it was also the illegal local policies, customs and procedures of the defendants and Turlock Chief of Police." Complaint, ¶ 1.  The asserted custom and policy is described as "minimizing [the responding officers] wrongful acts by covering for them and filing reports with the Stanislaus District Attorney so no action would be taken against the officers and not disciplining, firing, or prosecuting the [defendants]." *Id.*  Kelley further alleges that defendants, acting individually and in their official capacity, "under the color of law conspired to and engaged in a coverup of their misconduct.  In furtherance of their misconduct, and in their official capacity, defendants prepared and filed knowingly false police reports and conducted an inadequate investigation....designed to coverup their own individual wrongdoings." *Id.* ¶16.  Finally, Kelley asserts that individual defendants have "a propensity for violence, dishonesty, bigotry, racism, filing false reports" and although Chief Lott had prior knowledge of such abuses on the public, refused to train officers and coverup wrongdoings.  *Id,* ¶¶ 17-27.

Kelley presents no evidence to support the allegations made in his complaint against the individual defendants.  Not only is there no evidence to support the allegations aimed at the individual defendants, but there is also no evidence that the Turlock Police Chief or Police Department had prior knowledge of these alleged acts of misconduct.  Moreover, Kelley provides no evidence to support the claim that there is a policy or custom in place by which the Turlock Chief of Police has covered up any such alleged misconduct or that the officers were inadequately trained.  Additionally, while Kelley accuses the officers of misconduct, including filing a false police report and perjury, Kelley admitted in his deposition that the facts contained in the police report were correct.  Deposition of Kelley, 76:22-25.  Therefore, Defendants' motion for summary judgment on these claims is GRANTED.

## C.    Qualified Immunity

Police officers sued under Section 1983 for false arrest have are entitled to qualified immunity. *Pierson v. Ray*, 386 U.S. 547, 557 (1967).  When arrestees seek damages under Section 1983 against an officer who applied for the warrants for their arrest, the officer will not be immune, if on an objective

basis, it is obvious that no reasonable competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In an action brought under 42 U.S.C.S. § 1983, the same standard of objective reasonableness that is applied in the context of a suppression hearing defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest. Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost. *Malley,* 475 U.S. 335, 344-45.

"The threshold question in deciding a summary judgment motion based on qualified immunity is whether, taken in the light most favorable to the party asserting injury, the facts alleged who that the officers conduct violated a constitutional right. *Bingham* v. Manhattan Beach, 341 F.3d 939, 945 (9th Cir. 2003), citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L. Ed. 2d 272 (2001). If not, "there is no necessity for further inquiries concerning qualified immunity." *Id.* at 945. As discussed above, this Court finds that the responding officers did not violate a constitutional right. Therefore, no further inquiry is required. Defendants' motion for summary judgment on this ground is also granted.

### IV. CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendants' motion for summary judgment is GRANTED in FULL. The hearing currently set for July 16, 2007 is VACATED. This case is ORDERED to be CLOSED by the Clerk's office.

IT IS SO ORDERED.

**Dated:   July 5, 2007**                            **/s/ Lawrence J. O'Neill**
                                                                  UNITED STATES DISTRICT JUDGE